UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRACY BLACKWELL,

      Plaintiff,

v.                                                   Case No. 3:15cv340-CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.
_____/

MEMORANDUM ORDER

      This case is before the court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Tracy Blackwell's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-33. The parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") decision to discount the opinion of claimant's treating physician is not supported by substantial evidence. The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Blackwell, who will be referred to as claimant, plaintiff, or by name, raises two issues. She claims the ALJ erred by: (1) assigning reduced weight to the opinion of Dr. Belk; and (2) impermissibly "picking and choosing" the evidence to find her not disabled. (Doc. 9).

## PROCEDURAL HISTORY

On January 20, 2011, plaintiff protectively filed an application for SSI, claiming disability beginning December 21, 1992. T. 80.[1] The Commissioner denied the application initially and on reconsideration. T. 94, 111. Claimant appeared before the ALJ for hearings on October 23, 2013, and March 10, 2014. T. 37, 46. After the second hearing, the ALJ found claimant not disabled under the Act. T. 18-29. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The determination of the Commissioner is now before the court for review.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (docs. 7-2 through 7-9) and has 638 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

• Claimant has not engaged in substantial gainful activity since January 20, 2011, the application date.  T. 20.

• Claimant has the following severe impairments: affective disorders, osteoarthrosis and allied disorders, and alcohol, substance addiction disorders.  T. 20.

• Claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a).  She is able to occasionally lift 10 pounds, and she is able to frequently lift less than 10 pounds.  She is able to sit for 6 hours out of an 8-hour workday.  She is able to stand for 2 hours out of an 8-hour workday.  She is able to walk for 2 hours out of an 8-hour workday.  She is able to push and pull within the confines of her lifting and carrying limitations.  She is not able to climb ladders and scaffolds.  She must not be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants.  She is limited to simple, routine, repetitive tasks.  She is limited to tolerating few changes in a routine work setting defined as infrequent changes in the workplace.  T. 22.

• Claimant is unable to perform any past relevant work.  T. 28.

• Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 28.

•     Claimant has not been under a disability, as defined in the Act, since January 20, 2011, the date the application was filed. T. 29.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  A reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

Case No. 3:15cv340-CJK

economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

### FACT BACKGROUND AND MEDICAL HISTORY[3]

In the application for SSI, Ms. Blackwell claimed disability due to head trauma, arm/shoulder/leg/knee/foot injury, jaw trauma, spleen removal, depression, and asthma.  T. 80.  On October 23, 2013, she testified at a hearing before the ALJ as to her health conditions and daily activities.  T. 44-67.  She was born in 1970 and lives with her 10-year-old son and 26-year-old daughter.  T. 48.  Claimant has a 9th-grade education and is able to read and write, but struggles with comprehension and following instructions.  T. 49, 52.  Although she can add and subtract "a little bit," she can only multiply and divide with a calculator.  T. 49-50.  "Most of the time" she can make change for a $20 bill.  T. 50.  Her daughter, however, pays the bills and manages claimant's finances.  T. 48, 50.  She admits to drinking "probably two beers a day or every other day," but has "a prescription for the pill to stop [her] from drinking."  T. 51.

Although Ms. Blackwell worked at Wal-Mart from 1999 to 2002 as a cleaner and stocker, she testified she can no longer work because of several physical and

---

[3] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  The facts below, where not derived from the medical records, are based largely, if not entirely, on plaintiff's testimony in that regard.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

psychological issues. T. 50-52. She underwent surgery several times after her legs were "crushed" in an auto accident. T. 51-52, 54. To reduce swelling and pain in her legs, she lays in bed and elevates them. T. 53. Claimant also experiences problems with her elbow and shoulder. T. 51-52, 54. She has asthma and, following the removal of her spleen, "a tendency of getting sick a lot." T. 52, 56. For her pain, plaintiff takes Lortab, Naproxen, and Ultram. T. 52. She also takes Sertraline for depression and Xanax because she has panic attacks and gets "angry a lot." T. 52-53. Her anger issues stem from her pain, as well as problems with her memory and comprehension. T. 55-56. In addition to taking medication, claimant sees a counselor once a week for mental health problems. T. 54-55. The counselor is helping plaintiff with her "cutting behaviors." T. 56.

As for activities of daily living, Ms. Blackwell is able to: cook dinner; do her own grocery shopping; bathe and dress herself without assistance; lift a gallon of milk; drive for short distances; and wash dishes and clothes. T. 58-59, 61. Plaintiff can also walk across the street to her mother's house. T. 57, 62.

William Belk, M.D., served as Ms. Blackwell's primary care physician since 2004. T. 388. On May 26, 2004, claimant complained to Dr. Belk of residual right knee pain from a fractured patella suffered in a car accident. T. 388. After a physical examination, Dr. Belk diagnosed "osteoarthrosis" and referred plaintiff to Dr. Juliet

DeCampos for treatment.  T. 388.  On June 10, 2004, Dr. Belk prescribed Lortab to treat the pain.  T. 387.

Although claimant complained of insomnia and stress on July 29, 2004, Dr. Belk noted her mental status and affect were normal.  T. 385.  Dr. Belk prescribed Elavil to treat the insomnia.  T. 385.  On February 18, 2005, Ms. Blackwell reported shoulder pain "that wakes her up at night."  T. 379.  Dr. Belk injected the right shoulder "with Depomedrol and Marcaine."  T. 379.

In April 2005, plaintiff told Dr. Belk she was experiencing depression, problems with her daughter, no sex drive, and pain in her neck and back.  T. 376. Dr. Belk noted claimant's mental status and affect were depressed; Belk prescribed Cymbalta to treat the depression.  T. 376.  On June 10, 2005, plaintiff reported she resumed taking Wellbutrin and stopped using Cymbalta because the latter caused itchiness.  T. 374.  Dr. Belk noted her mental status was normal.  T. 374.  For claimant's depression, Belk ordered a trial of Gabitril and provided samples of Risperdal.  T. 374.

On August 23, 2005, Dr. Belk prescribed Paxil after plaintiff experienced worsening depression.  T. 370.  Belk also noted claimant's mood and affect were depressed.  T. 370.  On October 4, 2005, plaintiff complained about her temper, indicating "she is getting angry, pushing child away.  Hurts all the time."  T. 369. Dr. Belk described Ms. Blackwell's mood and affect as anxious and depressed.  T.

369.  Belk increased the Paxil dosage and also prescribed Klonopin.  T. 369.  In March 2006, Dr. Belk prescribed Alprazolam.  T. 364.  When claimant complained of knee pain on April 13, 2006, Dr. Belk administered injections of Depomedrol and Marcaine.  T. 361.  On June 19, 2006, Dr. Belk described claimant's mood and affect as normal.  T. 358.  Dr. Belk performed 5 additional Depomedrol and Marcaine injections to the right knee through May 2007.  T. 341, 343, 345, 351, 357.

On September 8, 2008, Ms. Blackwell reported worsening depression for the previous 3 weeks.  T. 322.  She was "[n]ot getting up and doing anything, not eating, not sleeping, dishes have been in the sink for 3 months."  T. 322.  Dr. Belk confirmed plaintiff's mood and affect were depressed and prescribed Citalopram Hydrobromide.  T. 322.  Claimant again reported depression on February 25, 2009, describing "[n]o motivation, [n]ot doing anything, doesn't leave the house."  T. 314.  Dr. Belk described plaintiff's mood and affect as depressed and prescribed Abilify.  T. 314.  The next month, Dr. Belk noted claimant's mood and affect were normal and "[s]he is much better on the Abilify."  T. 312.

On March 5, 2010, however, plaintiff indicated her "antidepressant is not strong enough, not doing anything."  T. 304.  Dr. Belk noted claimant's mood and affect were depressed; he also added Prozac to her medication regimen.  T. 304.  When plaintiff returned in July 2010, she indicated the "Prozac is not working any more."  T. 302.  Dr. Belk noted claimant's mood and affect were depressed; he

continued the Prozac but added Abilify.  T. 302.  On September 8, 2010, claimant again presented with depression.  T. 301.  She indicated the "[m]edicine is working, she just can't afford it.  Still having suicidal ideation."  T. 301.  Dr. Belk "gave her samples of Seroquel" and stated "[s]he really is disabled because of her knee and depression.  Maybe Lakeview [(a local mental health facility)] can help."  T. 301.

Then, on April 12, 2011, plaintiff was found unresponsive and taken to West Florida Hospital with admitting diagnoses of "suicide attempt via benzodiazepine overdose"; alcohol intoxication; and hyperthyroidism.  T. 401.  She was intubated and placed in the intensive care unit.  T. 401.  When her condition stabilized, she was discharged from the hospital on April 15, 2011.  T. 401.

Claimant returned to Dr. Belk on April 27, 2011, and told him: "She got drunk, took some extra pills, ex-husband is trying to take her son away, was in Pavilion [(another mental health facility)] for 2 days, in ICU for 3 days."  T. 431.  Belk noted her mood and affect were normal and prescribed Restoril.  T. 431.  During a November 3, 2011 visit, claimant was "crying all the time" and "[w]hen she has to do things [her] legs hurt."  T. 424.  Dr. Belk prescribed Restoril and Paxil to treat depression.  T. 424.  On August 30, 2012, Ms. Blackwell said she wasn't sleeping and "she cuts herself to relieve pain and stress."  T. 523.  Dr. Belk noted her mood and affect as depressed and prescribed Sertraline, Alprazolam, and Restoril.  T. 523.

On May 5, 2013, claimant was taken to West Florida Hospital following an episode of self-mutilation.  T. 571.  She "relapsed on her drinking" and "superficially cut her left lower extremity" after learning her ex-husband was found dead inside the trunk of his car.  T. 571.  Raul Jimenez, M.D., examined plaintiff, determined "she really does not meet Baker Act criteria,"[4] and released her.  Later, in January 2014, claimant visited Dr. Belk and informed him the "depression pills are not working."  T. 634.  Belk noted claimant's mood and affect were abnormal and depressed.  T. 635.  He replaced plaintiff's Sertraline with Effexor.  T. 635.

On March 14, 2012, Julie Harper, Psy.D., performed a consultative examination of Ms. Blackwell.  T. 469-73.  Dr. Harper noted claimant's euthymic affect and claimant reported stable mood.  T. 472.  Dr. Harper diagnosed: "Major Depressive Disorder, recurrent, moderate r/o severe"; "Posttraumatic Stress Disorder"; "Amnestic Disorder NOS"; "Alcohol Abuse in sustained early remission."  T. 472.  Harper reported "[t]here are several symptoms suggestive of head trauma including a disruption in frontal lobe functioning, loss of attention and disruption in short-term recall."  T. 472.

---

[4] *See Boller v. State*, 775 So.2d 408, 409-10 (Fla 1st DCA 2000) (The Baker Act permits involuntary commitment if there is "clear and convincing evidence that without treatment, the patient would pose a real and present threat of substantial harm to herself, or a substantial likelihood that in the near future she will inflict serious bodily harm on herself or another, as evidenced by recent behavior.").

On April 4, 2012, Catharina Eeltink, Ph.D., reviewed plaintiff's medical records and completed a Mental Residual Functional Capacity Assessment as part of the disability application process.  T. 89-91.  Dr. Eeltink concluded "[c]laimant would be able to remember and carry out short and simple instructions" but "may have some difficulty with more complex instructions due to reduced concentration." T. 90.  Dr. Eeltink also noted: (1) "[c]laimant may have some difficulty sustaining attention and concentration for extended periods and completing a workday at a reasonable pace"; and (2) "[c]laimant will have difficulty adapting to change but could complete routine tasks in a setting without frequent changes, strict production quotas, or a fast-paced work environment."  T. 90-91.

Plaintiff's counselor at Lakeview Center, Maria Paoli, M.A., completed a Supplemental Questionnaire as to Residual Functional Capacity on September 17, 2013.  T. 585-86.  Paoli assessed extreme limitations in claimant's ability to maintain social functioning and understand, carry out, and remember instructions in a work setting; marked limitations in her ability to perform repetitive tasks and respond appropriately to supervision and coworkers; and slight limitations in her ability to perform simple tasks.   T. 585-86.   Paoli stated Ms. Blackwell "has serious impairment in physical and cognitive functioning" and predicted her impairments or treatment would cause her to miss more than 4 days of work each month.  T. 586.

On September 20, 2013, Dr. Belk completed a Supplemental Questionnaire as to Residual Functional Capacity.  T. 587-88.  Dr. Belk indicated claimant would experience marked difficulties in: (1) activities of daily living; (2) maintaining social functioning; (3) understanding, carrying out, and remembering instructions in a routine work setting; (4) performing simple tasks in a work setting; and (5) performing repetitive tasks in a work setting.  T. 587-88.  Dr. Belk concluded plaintiff's impairments or treatment would cause her to miss more than 4 days of work each month.  T. 588.

On November 19, 2013, John Duffy, Ph.D., performed a consultative examination of Ms. Blackwell which included memory testing.  T. 613-15.  Dr. Duffy diagnosed "amnestic disorder NOS; alcohol dependence; depressive disorder NOS; borderline personality disorder; borderline intellectual functioning."  T. 615. On a Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Duffy indicated plaintiff would have no restriction in her ability to understand, remember, and carry out simple instructions, but marked restriction in her ability to understand, remember, and carry out complex instructions.  T. 616.  Duffy concluded claimant would have moderate restriction in her ability to interact appropriately with the public, supervisors, and coworkers, as well as moderate restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  T. 617.

## ANALYSIS

Ms. Blackwell claims the ALJ erred by: (1) discounting the opinion of Dr. Belk; and (2) "cherry-picking" the evidence to find her not disabled.  (Doc. 9).

Dr. Belk

Plaintiff first argues the ALJ erred by assigning reduced weight to the opinion of her treating physician, Dr. Belk.  Absent good cause, the opinion of a treating physician must be accorded considerable or substantial weight by the Commissioner. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips,* 357 F.3d at 1241; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  *See* 20 C.F.R. § 416.927(c)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d

1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241. "[F]ailure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The ALJ assigned partial weight to the Supplemental Questionnaire completed by Dr. Belk on September 20, 2013, finding: (1) it was "conclusory in nature"; (2) it was "inconsistent with the treatment records, which show that the claimant's affect and mood were usually normal"; and (3) "there is no evidence that Dr. Belk was aware of the extent of the claimant's alcohol consumption and what effect it had on her mood symptoms and the psychotropic medications prescribed." T. 27.

Plaintiff urges that Dr. Belk's notes do not in fact reflect that claimant's mood and affect were "usually normal," because Belk noted claimant's mood and affect were depressed on 10 occasions, while he noted her mood and affect were normal

on only 5 occasions.  (Doc. 9, p. 16).  In response, the Commissioner notes: (1) plaintiff "does not cite four additional examinations in the record where Dr. Belk expressly found Plaintiff's mood and affect to be normal"; (2) "Dr. Belk examined Plaintiff dozens of times and did not expressly note any issues with Plaintiff's mental status, mood or affect"; and (3) "the ALJ expressly noted that Dr. Harper found Plaintiff's affect was euthymic (normal) and mood was stable."  (Doc. 12, p. 12).

The record reveals Dr. Belk described plaintiff's mood and affect as normal on 9 occasions, T. 312, 327, 358, 374, 385, 431, 514, 521, 535.  In contrast, Dr. Belk described plaintiff's mood and affect as depressed on 11 occasions.  T. 301, 302, 304, 314, 322, 369, 370, 376, 523, 533, 635.[5]  Although Dr. Harper also found claimant's affect was euthymic and her mood was stable, T. 472, that evidence does not render the ALJ's "usually normal" assertion accurate.[6]

The Commissioner also argues "Dr. Belk examined Plaintiff dozens of times and did not expressly note any issues with Plaintiff's mental status, mood or affect." This court, however, cannot draw the inference that claimant's mood and affect were normal on those visits when Dr. Belk expressly noted so on other visits.  Thus, the

---

[5] On January 16, 2014, Dr. Belk described plaintiff's mood and affect as abnormal and depressed. T. 635.  Although the ALJ discussed this visit in the decision, T. 24, plaintiff did not mention it in her brief.

[6] The ALJ indicated the "treatment records" showed claimant's mood and affect were usually normal.  Because Dr. Harper is a consultative examiner—not a treating physician—her report does not qualify as a "treatment record."  Furthermore, Dr. Duffy, another consultative examiner, noted claimant's mood was mildly depressed.  T. 614.

claim that the treatment records "show that the claimant's affect and mood were usually normal" mischaracterizes the evidence and does not provide good cause to discount Dr. Belk's opinion.

Next, claimant argues the ALJ committed legal error by discrediting Dr. Belk's opinion due to claimant's alcohol use before finding she was disabled. (Doc. 9, p. 16-19). Under 42 U.S.C. § 1382c(a)(3)(J) "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Substance abuse is "material" to the disability determination if the claimant would not be disabled if the alcohol or drug use ceased. 20 C.F.R. § 416.935(b). "[T]he claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination[.]" *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001).

The regulation implementing 42 U.S.C. § 1382c(a)(3)(J) states: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability[.]" 20 C.F.R. § 416.935(a). This language establishes that consideration of a claimant's substance abuse is appropriate only if the ALJ makes an initial determination that the claimant is disabled. As the Tenth Circuit has stated:

> The implementing regulations make clear that a finding of disability is a condition precedent to an application of § [1382c(a)(3)(J)]. 20 C.F.R. § 416.935(a). The Commissioner must first make a determination that the claimant is disabled. *Id.* [The Commissioner] must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol. *Id.* § 416.935(b)(1).

*Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001); *see also McCrea v. Astrue*, 407 F. App'x 394, 397 (11th Cir. 2011) ("[O]nly after the ALJ determines that a claimant is disabled and finds medical evidence of drug addiction does the ALJ 'determine whether . . . drug addiction . . . is a contributing factor material to the determination of disability.'") (*quoting Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001)).

Here, when discussing why partial weight was afforded to Dr. Belk's opinion, the ALJ stated "[t]here is no evidence that Dr. Belk was aware of the extent of the claimant's alcohol consumption and what effect it had on her mood symptoms and the psychotropic medications prescribed."[7] T. 27. The Commissioner indicates the ALJ's statement constitutes speculation as to why Dr. Belk's opinion was not supported by the record. (Doc. 12, p. 13) ("The ALJ clearly found that Dr. Belk's opinion was not supported by the record and the fact that she additionally surmised as to why Dr. Belk so opined does not violate SSR 13-2p."). Thus, in the

---

[7] Plaintiff notes Dr. Belk was aware she consumed alcohol. (Doc. 9, p. 20). In April 2011, Belk noted claimant "got drunk, took some extra pills, ex-husband is trying to take her son away, was in Pavilion for 2 days, in ICU for 3 days. Her teeth are missing." T. 431.

Commissioner's view, the ALJ believed Dr. Belk would have offered a less restrictive opinion had he known the extent of claimant's alcohol use.[8]  If so, the ALJ implicitly concluded claimant's alcohol use had a significant detrimental effect on her mood.  Because the ALJ never made the initial determination that claimant was disabled, the ALJ erred by discounting Dr. Belk's opinion by referencing claimant's alcohol use.  Although the ALJ also independently discounted Dr. Belk's opinion based on its inconsistency with the treatment records, as discussed above, the treatment records were not inconsistent with Belk's opinion.  The ALJ's statement regarding Belk's knowledge of claimant's substance abuse does not establish good cause to reject the opinion of a treating physician.

The ALJ also stated Dr. Belk's opinion was "conclusory in nature."  T. 27.  Although the questionnaire did not reference Ms. Blackwell's impairments, the record contains extensive notes from Dr. Belk which document his observations and his attempts to treat claimant's various conditions.  T. 296-390, 424-53, 490-97, 509-24, 527-52, 593-96, 631-38.  Notably, on September 8, 2010—before Ms. Blackwell applied for SSI—Dr. Belk noted "[s]he really is disabled because of her knee and depression."  T. 301.  In addition, Dr. Belk submitted a letter dated January 19, 2011, stating Ms. Blackwell "has major depression and orthopedic disability due to lower

---

[8] Because the supplemental questionnaire did not ask Dr. Belk to consider claimant's limitations in the absence of alcohol use, it is not apparent knowledge of claimant's alcohol use would have had an effect on Belk's opinion.

extremity injuries caused from an auto accident many years ago.  Ms. Blackwell is disabled due to her depression and injuries."  T. 400.  Although the ALJ assigned little weight to the letter because the statements were "unexplained conclusions" and "the issue of disability is reserved to the Commissioner," T. 26, the letter does provide some insight into the basis for the conclusions found on the September 20, 2013 questionnaire.  Thus, standing alone, the ALJ's reference to the "conclusory nature" of the questionnaire does not provide good cause to reject the opinion.  Based on the foregoing, the Commissioner's decision must be set aside and the case remanded for reconsideration of the opinion of claimant's treating physician.

ALJ's Evaluation of the Evidence

Plaintiff also claims "[t]he ALJ impermissibly 'picks and chooses' through the evidence to arrive at a decision of non-disability."  (Doc. 9, p. 20-24).  Plaintiff argues the ALJ's consideration of the opinions of Maria Paoli, Dr. Eeltink, Dr. Duffy, Dr. Harper, and Dr. Jimenez was improper.  Because the ALJ's evaluation of Dr. Belk's opinion was flawed, a detailed discussion of plaintiff's second claim of error is not warranted.  Upon remand, however, the ALJ is advised that an ALJ may not simply pick and choose among medical evidence without explanation.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.") (*citing Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

In particular, if a doctor's opinion is assigned significant weight, and vocationally-significant parts of that doctor's opinion are omitted from the residual functional capacity determination, the reasons for the omissions should be apparent from the ALJ's decision. *See Winschel*, 631 F.3d at 1179 ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'") (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (*citing Owens*, 748 F.2d at 1516).

Accordingly, it is ORDERED:

The Commissioner's decision is set aside and the matter REMANDED for further proceedings consistent with this order.

DONE AND ORDERED this 28th day of September, 2016.

*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**